UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

DOUGLAS SONNIER
    Plaintiff                       :        C.A. No. 2:20-CV-00002-JDC-KK
                                                        Judge James D. Cain, Jr.

VS.

RECON MANAGEMENT SERVICES, INC. :
    Defendant

## RECON MANAGEMENT SERVICES, INC.'S, REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DECERTIFY

ReCon submits this Reply Memorandum in Support of its Motion to Decertify. Plaintiffs' opposition memorandum is an attempted 23-page distraction from the realities of litigating this matter as a collective action before a **jury**. ReCon has the burden to prove the applicable FLSA exemptions apply to the plaintiffs in this matter. No matter how many times (in now multiple filings) the plaintiffs try to mislead the Court and claim the only relevant inquiry is whether the salary basis test is met, ReCon has the burden to prove it complied with not only the salary basis test, but also the applicable job duties tests for **each** asserted white-collar exemption under the FLSA, applying both the standard and highly compensated employee ("HCE") tests. ReCon must do this for every single plaintiff in this case, one by one.

To establish the applicable FLSA exemption for each plaintiff, ReCon must prove s/he was paid a salary, and that any deductions taken were permissible under the FLSA. *See,* 29 C.F.R. § 541.602. The onerous and multi-layered documents that plaintiffs claim are relevant to that inquiry exceed 70,000 pages. As stated in its Motion for Protective Order (Doc. 107) and Memorandum in Opposition to Plaintiffs' Motion to Compel (Doc. 121), ReCon maintains those documents are

overbroad and irrelevant under Fed. R. Civ. P. 26(b)(1), which requires plaintiffs' discovery requests to be both relevant and proportional to the needs of the case. Plaintiffs claim the documents are necessary to show they were subject to improper deductions, even if they did not suffer actual damage. However, the Supreme Court has just recently held that plaintiffs do not have standing to bring this action if they did not suffer actual harm. *See,* TransUnion LLC v. Ramirez, No. 20-297, 2021 WL 2599472, at *3 (U.S. June 25, 2021). Therefore, ReCon maintains that plaintiffs lack standing to bring this action to the extent they did not suffer actual harm, rendering the 70,000 additional documents plaintiffs currently seek overbroad and irrelevant.

ReCon must then prove whether the HCE test applies for each plaintiff so that the correct test can be applied to that particular plaintiff. *See,* 29 C.F.R. § 541.601. This is just the beginning of the process, however, as ReCon must then prove that each plaintiffs' respective job duties meet the individual requirements for the asserted white-collar FLSA exemptions for executive, administrative, and learned professional employees, or alternatively the combination exemption, each of which containing its own unique criteria. *See,* 29 C.F.R. §§ 541.100, 200, 300, and 708.

ReCon cannot merely rely on testimony of adverse-witness plaintiffs, who can hardly be expected to be forthcoming with evidence supportive of ReCon's defenses, to satisfy its burden in this case. Non-party testimony of supervisors and coworkers familiar with the customary and regular job duties of the plaintiffs will be required for ReCon to present its case-in-chief, which ReCon expects to exceed 70 witnesses. *See,* Doc. 110-6. This evidence is necessary as contrary to plaintiffs' incorrect assertions they are similarly situated, they are, quite simply, different.

As previously detailed, some plaintiffs worked "in-house" at ReCon's offices in Beaumont and Sulphur, and others worked "in-plant" at ReCon's clients' facilities. In-plant employees work at separate locations, for separate entities, subject to separate rules and regulations promulgated

by each respective client and are therefore subject to differing pay structures and schedules. *See,* Doc. 88-15 at para. 15. As a result, in-plant employees with similar qualifications at the same location can be subject to different supervisors, work with different coworkers, and have different job duties and responsibilities. "In-house" employees primarily work in ReCon offices and report directly to ReCon management, working on discrete design projects for multiple clients. *See,* Doc. 88-15 at para. 17.

As detailed previously, the plaintiffs run the gamut of geographic locations and employment settings. Doug Sonnier worked at both ReCon's in-house offices in Beaumont and Sulphur. Lloyd Higginbotham and Nick Cuccio, Jr., worked in-house in Sulphur with different job duties, departments, supervisors and co-workers. Scott Sandifer worked both in-house in Sulphur and in-plant at Firestone and Calcasieu Refining. Warren Bailey, Jr., worked both in-house in Sulphur and in-plant at Chenier. Sterling Gill, Carrie Johnson, and Michael Abshire worked in-plant at Sasol, with Ms. Johnson in the cost-control department and Mr. Gill and Abshire having different job duties and co-workers in the chemical engineering department. Lance Hawkins worked in-plant at Phillips 66 and Westlake Chemical. Merwyn Wright worked in-house at Beaumont. Daniel Smith worked in-house at Sulphur and in-plant at Sasol. Glenn Campbell worked in-plant at Firestone and Cheniere.

In-house employees must be knowledgeable of and apply the separate rules and regulations of each client for whom they perform services. *See,* Doc. 88-12 at para. 13. Thus, in-house employees have wholly separate supervisors and coworkers from in-plant employees, as the latter rarely (if ever) step foot inside ReCon's offices and report to the employees of ReCon's clients rather than ReCon's management. Further, even in-house employees' supervisors and coworkers can differ as ReCon has multiple offices, each with separate supervisors and employees.

3

These disparate geographical and employment settings compel plaintiff-specific defenses that result in procedural considerations unfair to ReCon when allowed to proceed as a collective action. Witness testimony from dozens of individuals from ReCon's various clients and in-house locations spanning the Gulf Coast region will be required for ReCon to prove its defenses. Plaintiffs are not entitled to limit ReCon's evidence by bringing this as a collective action, particularly considering ReCon's burden of proof. Plaintiffs have the burden to prove that the plaintiffs are similarly situated in this matter, after which the burden shifts to ReCon to prove the FLSA exemptions apply. Plaintiffs have represented to this Court they expect their case-in-chief to last an entire week. Faced with a much more complicated burden in this matter, ReCon's case-in-chief will obviously last even longer.

This is a jury trial. Plaintiffs are therefore asking the jury to review over 70,000 pages of documents and testimony of over 70 witnesses to determine:

1. Whether a plaintiff was paid a salary satisfying the FLSA's salary basis test;

2. Whether any deductions were taken against the plaintiff's salary that were permissible under the FLSA;

3. Whether the plaintiff's salary qualifies for the HCE test;

4. Whether the plaintiff performed job duties that satisfy the executive employee exemption under the applicable standard or HCE test;

5. Whether the plaintiff performed job duties that satisfy the administrative employee exemption under the applicable standard or HCE test;

6. Whether the plaintiff performed job duties that satisfy the learned professional employee exemption under the applicable standard or HCE test;

7. Whether the plaintiff performed job duties that satisfy the combination exemption under the applicable standard or HCE test; and

8. Whether the plaintiff suffered actual damage (which determines whether the plaintiff has actual standing to bring this action in the first place) and the calculation of any such damage.

To add to the complexity of the jury's mandate in this case, for each of the white-collar exemptions, the jury will be required to review the relevant documents and testimony (colored by each plaintiff's disparate geographic and employment setting) to determine whether the plaintiff performed duties that would make them exempt, including:

- Management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

- Customarily and regularly directing the work of two or more other employees;

- Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight;

- The performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

- The exercise of discretion and independent judgment with respect to matters of significance;

- The performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

*See*, 29 C.F.R. §§ 541.100, 200, 300, and 601.

Plaintiffs then want the jury to **repeat this process 11 more times** for the other plaintiffs.

Plaintiffs completely ignore Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567 (E.D. La. 2008), in their opposition, despite it directly addressing the procedural concerns and potential unfairness resulting from proceeding as a collective action in this case. As stated previously, in decertifying the collective, Johnson recognized that due to the dissimilarities in plaintiffs' job duties, ruling on the merits in a collective action would be "**fundamentally unfair**[.]" *See,* Johnson at *587 (emphasis added).

In ignoring Johnson, Plaintiffs rely on Segovia v. Fuelco Energy, LLC, No. SA-17-CV-1246-JKP, 2021 WL 2187956 (W.D. Tex. May 28, 2021), a case in which, "Plaintiffs and the Opt-

5

ins share[d] a highly similar employment setting, with each employee performing the same or essentially the same work under the same set of supervisors subject to the same pay provisions and policies or practices." Segovia at *9. Such is not the case here. As detailed above, ReCon employees work in diverse employment settings, performing differing job duties dependent on the particular client's needs, rules, and regulations, for wholly separate supervisors, with unique coworkers, subject to differing pay structures and schedules.

Similarly, plaintiffs also rely on Snively v. Peak Pressure Control, LLC, 314 F. Supp. 3d 734, 737 (W.D. Tex. 2018), a case in which the plaintiffs all shared the same job – pressure control operators. *See*, Snivley at *737. Further, the Snivley plaintiffs held similar job qualifications, and all shared the same job description and performed the same duties regardless of location. *See, id.* at *740. Plaintiffs here, however, spanned the Gulf Coast region subject to varying standards and procedures, with varying qualifications and divergent job duties and titles encompassing:

- Doug Sonnier — Lead I/E Design Specialist III
- Lloyd Higginbotham — Piping Design Specialist II
- Scott Sandifer — Senior Piping Design Specialist IV
- Warren Bailey, Jr. — Electrical Engineer III/Project Manager III
- Sterling Gill — Chemical Engineer I
- Lance Hawkins — Mechanical Engineer I
- Carrie Johnson — Cost Control Specialist
- Merwyn Wright — Piping Design Checker
- Nick Cuccio, Jr. — Senior Design Specialist III
- Daniel Smith — Chemical Engineer III/IV
- Glenn Campbell — Mechanical Engineer III/Project Manager III
- Michael Abshire — Chemical Engineer II

The Fifth Circuit through Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021), has mandated that the Court adhere to a new framework in determining whether an action can proceed on a collective basis. Swales recognized that the consideration of merits questions could require highly individualized inquiries into each potential opt-in plaintiff's circumstances and preclude collective treatment. *See*, Swales at 441-443. As stated in Swales, in determining

6

whether to decertify the collective, the Court must look to: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." Swales at 437 (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)). As detailed above, all three of these concerns weigh heavily in decertification of the collective.

Plaintiffs' desire to proceed as a collective action has little to do with judicial economy or fundamental fairness, and everything to do with an attempt at settlement leverage. The Court should not subject a jury to juggle the salary basis test, highly compensated employee exemption test, permissible deduction inquiries, executive employee exemption test, administrative employee exemption test, learned professional exemption test, and combination exemption test, for every single one of a dozen disparate plaintiffs in a trial that is expected to last upwards of a month. These are individualized inquiries best addressed individually, not collectively.

ReCon requests this Court decertify this conditionally certified collective action and dismiss the claims of the opt-in plaintiffs without prejudice. ReCon further requests all costs be assessed against plaintiffs.

Respectfully submitted,

_____
SCOTT J. SCOFIELD (#14429)
BRIAN M. BRADFORD (#33738)
Scofield, Gerard, Pohorelsky,
 Gallaugher & Landry
901 Lakeshore Drive, Suite 900
Lake Charles LA 70601
Telephone: 337-433-9436
Facsimile: 337-436-5205
Attorneys for Defendant,
ReCon Management Services, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all known counsel of record in the above referenced matter, via the email through the Court's ECF filing system, and/or by placing a copy of same in the United States mail, postage prepaid and properly addressed to:

Kenneth W. DeJean
kwdejean@kwdejean.com
Adam R. Credeur
adam@kwdejean.com
Law Offices of Kenneth W. DeJean
P. O. Box 4325
Lafayette LA 70502

Michael A Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
Richard M. Schreiber
rschreiber@mybackwages.com
Josephson Dunlap, LLP
11 Greenway Plaza, Suite 3050
Houston TX 77046

Richard J. (Rex) Burch
rburch@brucknerburch.com
Bruckner Burch, PLLC
8 Greenway Plaza, Suite 1500
Houston TX 77046

Lake Charles, Louisiana, this 10th day of August, 2021.

_____
SCOTT J. SCOFIELD