UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**DOUGLAS SONNIER**                                **CASE NO.  2:20-CV-00002**

**VERSUS**                                         **JUDGE JAMES D. CAIN, JR.**

**RECON MANAGEMENT SERVICES INC**   **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is "Recon's Motion to Decertify FLSA Collective Action" (Doc. 110) wherein Defendant Recon Management Services, Inc.  ("ReCon") moves to decertify this conditionally certified collective action and dismiss the claims of the opt-in plaintiffs without prejudice.

## BACKGROUND

This suit arises under the overtime payment provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff Douglas Sonnier alleges that he was employed by ReCon at its facility in Sulphur, Louisiana, and worked there as an electrical instrument designer for around one year beginning in March 2017.[1] He further asserts that he "regularly worked more than 40 hours a week" and "routinely worked 60 hours a week."[2] He claims that he was paid the same hourly rate for all hours worked, on a "straight-time-for-overtime" basis with no additional compensation for overtime hours as required under

---

[1] Doc. 1, ¶¶ 22–26.
[2] *Id.* at ¶¶ 29–30.

the FLSA.[3] He also maintains that numerous other individuals performing similar work for ReCon were subject to this pay scheme. [4]

Lloyd Higginbotham and Scott Sandifer opted into the suit as Plaintiffs on June 10, 2020, and August 12, 2020, respectively.[5] Pursuant to Plaintiffs' motion, the action was conditionally certified under the lenient step one "Lusardi" standard[6] which has been expressly rejected by the Fifth Circuit in *Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430 (5th Cir. 2021). The *Swales* Court announced a new framework pursuant to which courts within the circuit must follow to determine whether plaintiffs have met their burden that employees are "similarly situated" in deciding whether the case may proceed on a collective basis.

## LAW AND ANALYSIS

ReCon maintains that the Opt-in Plaintiffs are not similarly situated to Mr. Sonnier, nor are they similarly situated to each other as required to proceed on a collective basis.

The FLSA generally provides that employers must pay their employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). Section 216(b) provides employees who are improperly denied overtime wages a cause of action to recoup unpaid wages, liquidated damages, and attorney's fees from their employers. But employers do not have to pay time-and-a-half to individuals "employed in a bona fide executive, administrative, or professional capacity."

---

[3] *Id.* at ¶¶ 31–37.
[4] *Id.* at ¶¶ 45–47.
[5] Docs. 24 and 32.
[6] *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987).

*Id.* § 213(a)(1). The FLSA itself does not define what it means for an employee to fall within one of these "white-collar" exemptions. Instead, it delegates authority to the Secretary of Labor to promulgate rules that define these exemptions. *Id.* The white-collar exemptions constitute affirmative defenses to overtime pay claims. The employer bears the burden of proving that a plaintiff is properly classified as an exempt employee. See *Corning Glass Works, v. Brennan,* 417 U.S. 188, 196-97, 94 S.Ct. 2223 (1974); *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737 (1966); *Dalheim v. KDFW-TV,* 918 F.2d 1220, 1224 (5th Cir. 1990); *Kastor v. Sam's Wholesale Club,* 131 F.Supp.2d 862, 865 (N.D.Tex. 2001).

To continue to proceed collectively under the FLSA, plaintiffs must show that they are "similarly situated"[7] to their fellow class members. See 29 U.S.C. § 216(b). "If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir. 1995). Decertification is necessary to ensure the applicable exemptions are given the "fair (rather than a 'narrow') interpretation" mandated by the Supreme Court. See *Encino Motorcars, LLC v Navarro,* 138 S.Ct. 1134 (2018).

At the decertification stage, the court decides based on the evidence developed during discovery whether the conditionally certified class should be decertified. See *Basco v. Wal-Mart Stores, Inc.,* 2004 WL 1497709, *3 (E.D.La. July 2, 2003). At this stage, a much stricter standard applies for showing the plaintiffs are similarly situated. See *Mooney,*

---

[7] The FLSA does not define "similarly situated." 29 U.S.C. § 216(b).

54 F.3d at 1214. The consideration of merits questions could require highly individualized inquiries into each potential opt-in plaintiff's circumstances and preclude collective treatment. *Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430 (5th Cir. 2021). A district court may determine that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated', *Swales,* 985 F.3d at 443, and conclude that Plaintiffs have not met their burden of establishing similarity. *Id.*

In deciding whether to decertify a conditionally certified collective action, the Court considers the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be plaintiff-specific; and (3) fairness and procedural considerations. See *Mooney,* 54 F.3d at 1213, n.7.

ReCon has asserted that the Opt-In Plaintiffs meet the applicable tests for the defined executive, administrative, and professional exemptions of the FLSA. Re-Con maintains that the individualized defenses of the Opt-In Plaintiff prevent an efficient proceeding with a representative class. See *Reyes v. Texas Ezpawn, L.P.,* 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007). The Court "has the discretion to determine whether the potential defense would make the class unmanageable." See, *Id.*

ReCon remarks that the Opt-in Plaintiffs work either "in-plant" or "in-house," or "in-plant" and "in-house." "In-plant" employees' whole workdays are generally spent on-site at ReCon's clients' facilities and answer client supervisor(s) on a daily basis.[8] ReCon

---

[8] Steve Cating Affidavit, Doc. 88-15 ¶¶ 15 and 16.

does not directly supervise the in-plant employees on a daily basis but is ultimately responsible for the employees. *Id.* In-plant employees work at separate locations, for separate entities, subject to separate rules and regulations promulgated by each respective client. In-plant employees are subject to differing pay structures, schedules, and job duties as per the client contract with ReCon.[9] In-plant employees with similar qualifications at the same location can be subject to different supervisors, work with different coworkers, and have different job duties and responsibilities.

Recon contends that the Opt-in Plaintiffs are not similarly situated to Mr. Sonnier, nor to each other. The Opt-In Plaintiffs held varying job titles, performed different job duties, and had diverse experience and skill levels. They performed their duties in multiple locations for various clients, each with their own unique organizational structures, regulations, job requirements, and supervisors.

ReCon notes that some of the Opt-in Plaintiffs were "highly compensated" under the law, and thus subject to a relaxed test to determine whether an overtime exemption applies. *Christopher v. SmithKline Beecham Corp.,* 132 S.Ct. 2156, 2173 (2012). Employees not "highly compensated" are subject to a more rigorous test. ReCon presents limited evidence of some of the various dynamics as to each of the individual Opt-in Plaintiffs to support its position that this lawsuit should be decertified. The table below does not present all of the particularized facts of each individual Opt-in Plaintiff, but is a sampling based on what ReCon has submitted to the Court.

---

[9] Mark Pilley Affidavit, Doc. 88-12, ¶ 14.

| Opt-in Plaintiff | Job Title | Job site[10] | Job duties | Compensation |
|---|---|---|---|---|
| Lloyd Higginbotham | Piping Design Specialist II | In-house[11] | | Highly compensated[12] |
| Scott Sandifer | Senior Piping Design Specialist IV | In-house and in-plant[13] | | Highly compensated[14] |
| Warren Bailey, Jr. | Electrical Engineer III/Project Manager III | In-house and in-plant | | Highly compensated[15] |
| Sterling Gill | Chemical Engineer I | In-house and In-plant | Perform tasks and calculations for engineering and design efforts supporting construction drawings and packages[16] | Not highly compensated[17] |
| Lance Hawkins | Mechanical Engineer I | In-house and In-plant | | Not highly compensated[18] |
| Carrie Johnson[19] | Cost Control Specialist | In-house and In-plant | | Highly compensated[20] |
| Merwyn Wright | Piping Design Checker | In-house[21] and In-plant | | Highly compensated[22] |
| Nick Cuccio, Jr. | Senior Design Specialist III | In-house and In-plant | Leading projects, drawing, modeling, and checking models[23] | Highly compensated[24] |

---

[10] In-plant employees worked at different facility locations.
[11] Mr. Higginbotham works in the Sulphur office.
[12] Doc. 110-1, p. 18.
[13] Defendant's exhibit I.
[14] Doc. 110-1, p. 18
[15] Id.
[16] Defendant's exhibit A, Sterling Gill depo. p. 43
[17] Doc. 110-1 p. 18.
[18] Doc. 110-1, p. 18.
[19] Ms. Johnson filed a Notice of Withdrawal of Consent on August 18, 2021. Doc. 127.
[20] Doc. 110-1, p.19.
[21] Mr. Wright worked in the Beaumont office. Defendant's exhibit G.
[22] Doc. 110-1, p. 19.
[23] Defendant's exhibit K.
[24] Defendant's exhibit J.

| Glenn Campbell | Mechanical Engineer III/Project Manager III | In-house and In-plant | | Highly compensated[25] |
|---|---|---|---|---|
| Michael Abshire | Chemical Engineer II | In-house and In-plant | Develop and Oversee engineering and design efforts for construction drawings/packages for projects[26] inspections to ensure project matched design | Highly compensated[27] |
| Daniel Smith | Chemical Engineer III/IV | In-house and In-plant[28] | | Highly compensated[29] |

ReCon argues that the overtime coverage and exemption issues in this case are highly individualized and purely personal to each plaintiff which will necessarily require a plaintiff-by-plaintiff analysis to determine whether any FLSA violation occurred and whether an overtime exemption applies.

ReCon maintains that in order for the Court to determine whether an exemption applies to a particular plaintiff, the Court must analyze each plaintiffs' respective compensation, job duties, classifications, levels of responsibility, and expertise. ReCon asserts that these determinations will change within ReCon's business structure, which will be subject to the various business structures of each of ReCon's multiple clients and the various work sites of ReCon's employees. Concerning work sites, ReCon's Opt-in

---

[25] Doc. 110-1, p. 19.
[26] Defendant's exhibit B, Michael Abshire depo. p. 63.
[27] Defendant's exhibit D, Responses to Defendant's interrogatories.
[28] Doc. 110-1, p. 19.
[29] Doc. 110-1, p. 19.

Plaintiffs work either at the Beaumont Office or the Sulphur Office, or both ("in-house"). Some Opt-in Plaintiffs work both "in-house" and "in-plant;" Opt-in Plaintiffs who work "in-plant" may work at various sites from Lake Charles, Louisiana to Houston, Texas. ReCon asserts that even in-plant employees with similar qualifications at the same location can be subject to different supervisors, work with different coworkers and have different job duties and responsibilities. See depositions of Gill, Abshire,[30] and Hawkins' response to interrogatories.[31]

ReCon explains that for it to prove an administrative exemption, for an in-plant Opt-in Plaintiff, it would potentially have to call (i) a representative from each client to testify as to what work the employee performed directly related to that respective client's business operations; (ii) client-employee(s) who were supervised by the Opt-in Plaintiff at each site to testify regarding management and supervisory roles the Opt-in Plaintiff performed; (iii) a representative from each client to testify regarding any exercise of discretion and independent judgment the Opt-in Plaintiff performed; and (iv) a ReCon representative to testify regarding the Opt-in Plaintiff's level of compensation to determine whether the relaxed test under the highly compensated employee exemption applies. ReCon asserts that this process would have to repeat itself for the "in-house" Opt-in Plaintiff noting that "in-house" employees have separate and different supervisors and work on discrete design projects for different clients.[32] ReCon submits a potential witness list for its defense which

---

[30] Defendants' exhibits A and B.
[31] Defendant's exhibit D, ¶ 4.
[32] Steve Cating Affidavit, Doc. 88-15, ¶ 17.

exceeds 70 witnesses for this jury trial.[33] In addition, ReCon asserts that "in-house" employees have different job duties and responsibilities from "in-plant" employees.[34]

ReCon also submits that individual determinations will have to be made based on whether or not the Opt-in Plaintiffs are highly compensated and subject to a more relaxed test as opposed to an Opt-in Plaintiff who is not highly compensated. The FLSA exempts highly compensated employees who are paid an annual salary exceeding $100,000 and customarily and regularly perform any one or more of the exempt duties or responsibilities listed in the executive, administrative, or learned professional exemptions. 29 C.F.R. § 541.601. "[A] high level of compensation is a strong indicator of an employees' exempt status" such that the performance of any one of the exempt duties of the executive, administrative or professional exemptions combined with the high level of compensation will make the employee exempt. 29 C.F.R. § 541.601(c).

For those Opt-in Plaintiff that are highly compensated, their compensation level plus any one of the following duties will make that plaintiff exempt:

- Management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

- Customarily and regularly directing the work of two or more other employees;

- Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight;

---

[33] Defendant's Exhibit E; Defendants' exhibit L.
[34] Mark Pilley Affidavit, Doc. 88-12 ¶¶ 1-14.

- The performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

- The performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § § 541.100, 200, 300 and 601. ReCon argues that whether a particular plaintiff satisfies the highly compensated exemption will involve a highly individualized analysis of the various duties as to each individual highly compensated employee and must be adjudicated on a case-by-case basis. See e.g., *Reyes,* at \*5 (noting the exempt or non-exempt status of any particular employee "must be determined on the basis of whether his duties, responsibilities, and salary meet all the requirements of the appropriate exemption criteria" and finding this "relevant statutory exemption criteria" would "require an individual, fact-specific analysis of each [employee's] job responsibilities) (citations omitted).

Opt-in Plaintiffs, through counsel, remarks that all ReCon is required to prove is that its straight time for overtime pay scheme complies with the FLSA's salary basis test, and that the differences would not render the exemption defenses unmanageable. Opt-in Plaintiffs contend that ReCon cannot satisfy this initial burden "since it paid Plaintiff on an hourly—not salary—basis, and therefore nothing about ReCon's exemption defenses prevents collective treatment in this case."[35]

---

[35] Plaintiffs' opposition brief, p. 4, Doc. 125.

Opt-in Plaintiffs suggest that "Recon fabricates a scare-story about an imaginary, never-ending mega-trial where it 'would **potentially** be forced to call' 70+ witnesses to testify about Plaintiffs' job duties to decide this **single-issue** case.³⁶ Opt-in Plaintiffs criticize ReCon's "unconventional trial strategy" as being "for better or worse" in which the "only thing making this case 'unmanageable' is ReCon."³⁷

As noted by Opt-in Plaintiffs, "the relevant inquiry is whether there is 'a demonstrated similarity among the individual situations … some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice,]' so that hearing the cases together furthers the purposes of Section 17, is fair to both parties and does not result in an unmanageable trial." *Vanzzini v. Action Meat Distributors, Inc.,* 995 F.Supp.2d 703, 720 (S.D. Tex. 2014) (citing *Crain v. Helmerich & Payne Int'l Drilling Co.,* 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)), "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1117 (9ᵗʰ Cir. 2018).

Opt-in Plaintiffs maintain that nothing about Recon's exemption defenses prevents collective treatment in this case and argues that ReCon does not indicate how it claims all Plaintiffs fall within the administrative, executive, professional, and combination exemptions, or how these exemptions apply or how they cannot be tried collectively. Opt-in Plaintiffs assert that the "only thing left to Recon then is to show the HCE duties element

---

³⁶ Id. p. 5.
³⁷ Id. pp. 5-6.

is 'individual to each plaintiff.' Even if Recon could make this showing (spoiler: it can't) the fact remains Recon is asking the Court to decertify a class because one part of one of its many exemption defenses."[38]

The Court respectfully disagrees with Opt-in Plaintiffs. ReCon will have to prove that it paid a salary and that any deductions taken were permissible under the FLSA. 29 C.F.R. § 541.602. As noted by ReCon, Opt-in Plaintiffs have requested as relevant, documents in excess of 70,000 pages. In their Motion to Compel, Opt-in Plaintiffs maintain that these documents are relevant to show they were subject to improper deductions, or as Opt-in Plaintiffs explain—"to test the merits of its [ReCon's] pay practice against the salary basis requirements of the FLSA."[39] This alone persuades the Court that there are significant and highly individualized inquires as to each Opt-in Plaintiff's salary and any alleged impermissible deductions.

Furthermore, and just as significant are the highly individualized inquiries into each Opt-in Plaintiff's job duties, responsibilities, disparate and factual employment settings, and particular exemptions as to each individual Plaintiff. The Court is persuaded by the fact that the Opt-in Plaintiffs each have various and different job titles, job descriptions, job locations, and job duties which are all relevant for the trier of fact to determine if ReCon is entitled to a specific exemption under the FLSA. In addition, the standard by which the tried of fact will determine if a specific exemption applies, changes dependent upon whether or nor the Opt-in Employee is highly compensated or not highly compensated. Not

---

[38] Plaintiffs' Opposition, p. 17, Doc. 125.
[39] Plaintiffs' Memorandum in Support of Motion to Compel Discovery and Request for Expedited Consideration, p. 1, Doc. 105-1.

only will this cause probable jury confusion, the Opt-in Plaintiffs are dissimilar as to their employment experiences and the nature of each Opt-in Plaintiff's job duties. Consequently, this Court has significant fairness and procedural concerns were it to try this case as a collective action. Because the Court finds that the Opt-in Plaintiffs' claims are highly fact-intensive and given the multiple exemptions that will be presented as to each individual Opt-in Plaintiff, the Court finds that decertification of the lawsuit is warranted.

## CONCLUSION

For the reasons set forth above, ReCon's Motion to Decertify FLSA Collective Action (Doc. 110) will be GRANTED, and the claims of the Opt-in Plaintiffs will be dismissed without prejudice.

**THUS DONE AND SIGNED** in Chambers on this 7th day of September, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**